UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
UNITED STATES OF AMERICA       :
                               :
    - against -                :         18 Cr. 404 (PAC)
                               :
CESAR CASTILLO,                :         ORDER
                               :
            Defendant.         :
                               :
------------------------------------------------------- x

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Cesar Castillo moves *pro se* to withdraw his guilty plea. (Dkt. 59.) On February 1, 2019, the defendant appeared in Court, signed a plea agreement, dated January 8, 2019,[1] and entered a plea of guilty to Count One of the Information, which charges conspiracy to distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846. He was scheduled to be sentenced on May 9, 2019, but that was adjourned on May 7 to June 27, 2019 and for a second time on June 24 to September 10, 2019. Before sentence was imposed, however, Castillo moved, pursuant to Fed. R. Crim. P. 11(d)(2)(B), to withdraw his guilty plea on the basis that his plea was not entered knowingly and voluntarily and he was denied effective assistance of counsel. (Def. Mot. at 1.) Defendant contends that his counsel abandoned his motion to suppress and "provided Defendant with false and inaccurate information and inappropriately induced, misled, deceived, and coerced the Defendant via threats and force into hastily accepting an unconditional and unfavorable plea agreement and pleading guilty thereto." (*Id.* at 2.) The defendant's motion does not allege his innocence. For the reasons discussed below, Castillo's motion is denied.

---

[1] Although the plea agreement date is marked January 8, 2018, the correct date is January 8, 2019.

1

## BACKGROUND

### A. The Crime & Guilty Plea

Castillo was initially charged in a complaint dated March 7, 2018. Initially, he offered to cooperate, and secured his release on bail. (*See* Dkt. 15.) Thereafter, Castillo reneged on his representation that he would cooperate. On or about June 8, 2018, Castillo waived indictment and was charged by information with conspiracy to distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846. His bail was revoked and he was remanded. (Dkt. 23.)

On September 24, 2018, Castillo moved to suppress the drugs found in his apartment.[2] (Dkt. 37.) In support of the motion to suppress, Castillo submitted affidavits from himself and his girlfriend. (Dkt. 39.) Castillo's affidavit stated that the DEA agents tackled him and put a gun to his head, that he refused consent to search his apartment, and that he told his girlfriend not to sign the consent. His girlfriend's affidavit admitted that she gave agents written consent to search the apartment, but claimed the consent was coerced.

On October 9, 2018, the Government filed its opposition to Castillo's motion to suppress. (Dkt. 41.) The Government disputed Castillo's account of the search and described what it believed the evidence would show if the Court held a hearing, including that the agents did not exert any undue pressure on Castillo's girlfriend; that the girlfriend told Castillo that she intended to sign the consent form; and that Castillo did not object to her signing it.

---

[2] The agents, after obtaining written consent to search the apartment, found approximately seven kilograms of a white powdery substance that later tested positive for cocaine, as well as $39,000 in U.S. currency, and a ledger that appeared to list drug transactions. (*See* Gov. Opp'n at 2, Dkt. 72.) Additionally, there was testimony from co-conspirators and electronic monitoring of incriminating conversations between Castillo, and the cooperators about narcotics and the DEA agents' reports of observation and surveillance. (*See* Feb. 1, 2019 Tr. at 11.)

On October 22, 2018, the Court entered a scheduling order proposed by the parties in which the Court would hold a hearing on Defendant's motion to suppress on December 3, 2018, with trial to commence on January 22, 2019. On November 29, 2018, at the parties' request, the Court adjourned the suppression hearing so that the parties could continue to engage in plea negotiations.

On February 1, 2019, the defendant appeared in Court and entered a plea of guilty to Count One of the Information, which charges conspiracy to distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846. The Plea Agreement provided that it was the Government's belief that the ten-year mandatory minimum would not apply because the Defendant was eligible for safety valve treatment. The Plea Agreement set the offense level of 25. Given a criminal history of Category 1, the resulting guideline sentence was 57 to 71 months. The letter was addressed to Patrick Brackley who had been retained by Castillo eleven months earlier on March 8, 2018.

Before accepting the plea, the Court placed Castillo under oath and asked Castillo questions. Castillo confirmed that he understood the proceedings and Mr. Brackley stated that he had explained the procedures to the Defendant and that the Defendant understood "his motion to suppress is now gone." (Feb. 1, 2019 Tr. at 2.) Castillo stated that his mind was clear and that he was not under the influence of any drugs or alcohol. (*Id.* at 3-4.) Castillo confirmed that Mr. Brackley had explained to him the consequences of pleading guilty. (*Id.* at 4.) Castillo said he was satisfied with Mr. Brackley's counsel, advice, and representation. (*Id.*)

The Court informed Castillo that he was "giving up valuable rights," and reviewed with him the right to plead not guilty, a right to a jury trial, and other associated constitutional rights.

(*Id.* at 4-6.) Castillo confirmed that he understood he would be waiving those rights by pleading guilty. (*Id.*) Following this exchange, the Court reviewed the Defendant's plea agreement, dated January 8, 2019. Castillo confirmed that the plea agreement was translated into Spanish, and that he reviewed it with Mr. Brackley. (*Id.* at 6.) Castillo confirmed that he signed the agreement voluntarily and that that no one made any threats or promises to get him to sign the agreement. (*Id.* at 6-7.)

Finally, Castillo stated that he was pleading guilty because he was in fact guilty and he explained in his own words what he did that made him guilty. (*Id.* at 9.) Castillo said he was trying to distribute cocaine. (*Id.* at 11-13.) The Court accepted the guilty plea finding that the defendant was "fully competent and capable of entering an informed plea," "aware of the nature of the charges and consequences of a plea of guilty," and that the "plea of guilty is knowing, voluntary, and supported by an independent basis in fact containing each of the essential elements of the offense." (*Id.* at 13.)

### B. Post-Plea Proceedings

On June 16, 2019, Castillo moved *pro se* to withdraw his guilty plea. (Def. Mot., Dkt. 59.) In a supporting affidavit, he contradicted essentially all the representations he made to achieve the acceptance of his guilty plea. Castillo now contends that (1) his attorney presented his plea for the first time on the day of his plea and that it had been drafted and prepared without his knowledge or consent; (2) his lawyer abandoned pursuit of the suppression hearing unbeknownst to him; (3) "utilized threats and coercion to encourage me to plead guilty by causing me emotion distress (sic) and leading me to believe that other than pleading guilty, my situation was hopeless;" (4) that his lawyer said he would never win his suppression hearing for numerous reasons, including, *inter alia*, that "the judge and the U.S. Attorney are on the same

4

team," and "[t]he judge and the prosecutor are crooked, they are not going to follow the law. The judge is going to do whatever he want. You might as well plead guilty. You know you are guilty. Come on, you know you sell drugs in the street." (Def. Aff. ¶¶ 16, 18, 20-22.)

At the Court's direction, Brackley, who is no longer representing the defendant,[3] submitted an affidavit denying "each and every allegation." (Brackley Aff. ¶ 25.) Brackley stated "at no time did I coerce him or in any way force him to enter the plea...Mr. Castillo is a thoughtful and involved client who understood his legal predicament." (*Id.* ¶ 22.) Brackley also stated, among other things, that "Castillo as well as the mother of his child fully and deeply discussed this [plea] offer" and discussed the fact that even if the "motion to suppress was in fact granted—Mr. Castillo would still be potentially liable without the actual drugs as there was cooperator testimony and other evidence to substantiate the conspiracy charges." (*Id.* ¶¶ 18-19.) Further, Brackley, stated that he "personally visited Castillo and on each and every visit was assisted by a Certified Spanish Language interpreter" and that they discussed the "necessity of withdrawing the motion to suppress and benefits of the plea agreement and potential loss of safety valve relief." (*Id.* ¶ 21.)

## DISCUSSION

### A. Legal Standard

A defendant may withdraw his guilty plea before he is sentenced if he shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant bears the burden of demonstrating valid grounds for relief. *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008). The decision of whether to allow the withdrawal is left to the discretion of the district judge. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

---

[3] Following the Defendant's motion to withdraw his guilty plea, the Court appointed attorney Bennett Epstein to represent Mr. Castillo on August 1, 2019. Brackley was relieved as counsel. (*See* Dkt. 68.)

When evaluating whether the defendant has proffered a "fair and just reason" to withdraw his guilty plea, the Court considers three factors: "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Doe*, 537 F.3d at 210 (citation omitted). "Where a motion to withdraw a plea is premised on involuntariness, the defendant must raise a significant question about the voluntariness of the original plea." *Id.* at 211 (internal quotation and citation omitted). "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres*, 129 F.3d at 715; *see also United States v. Gonzales*, 970 F.2d 1095, 1100 (2d Cir. 1992) ("The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.").

Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and justify withdrawal "to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). A claim of ineffective assistance of counsel entails showing that: "(1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms; and (2) it is reasonably likely that prejudice occurred – i.e., that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). To satisfy the prejudice factor in this context, "the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Id.*

## B. Application

Castillo fails to show a "fair and just reason" that would merit withdrawing his guilty plea. First, Castillo sought to withdraw his plea on June 16, 2019, more than four months after he pleaded guilty on February 1, 2019. This factor weighs against Castillo, as courts regularly find a delay of a few months militates against allowing a defendant to withdraw a guilty plea. *See United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000) (district court "well within its discretion in deciding to reject ... motion" to withdraw guilty plea where nearly five months elapsed between guilty plea and "first indication that [defendant] wished to withdraw it."). The validity of this factor is underscored by Castillo's prior conduct in securing bail based on a promise of cooperation, but then reneging on the proposed agreement once he has what he seeks only to abandon it. Second, Castillo never alleges his innocence, which weighs heavily against him and any such allegation would simply contradict his statements under oath during his plea allocution that he was pleading guilty because he was in fact guilty. *See United States v. Hudak*, No. 02 CR. 853(JFK), 2003 WL 22170606, at *3 (S.D.N.Y. Sept. 19, 2003) ("As the legal standard for withdrawal of a plea makes clear, legal innocence is a critical factor to be considered."). Also, the Government has marshaled significant evidence of guilt, even if the cocaine were to be suppressed. Third, allowing withdrawal at this stage would prejudice the Government, as it had expended significant time and resources preparing for a trial that was weeks away, which would have to be duplicated today. Further, members of law enforcement involved in the case are now conducting ongoing investigations and other assignments that would prejudiced.

Contrary to Castillo's argument, there is no suggestion in the record that his plea was coerced or anything other than voluntary. The Court conducted a plea colloquy with the

Defendant in accordance with Fed. R. Crim. P. 11(b)—four months before the instant motion was filed. During that colloquy, Castillo confirmed he understood the purpose of the proceedings. He confirmed that his plea agreement had been translated into Spanish, that he reviewed the terms of that agreement with Brackley, and that Brackley explained to him the consequences of pleading guilty to Count One of the Information. Castillo also stated, under oath, that he was pleading guilty voluntarily and no one had made threats or promises to induce him to plead. These statements at a plea allocution "carry a strong presumption of veracity," *Doe*, 537 F.3d at 213, and Brackley's sworn affidavit confirms that he and Castillo "deeply discussed" the plea agreement and that he did not coerce Castillo. Brackley's sworn affidavit also denies making any statements, such as "the judge and prosecutor are on the same team." *See Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) (The Second Circuit has said, "a plea ... is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." ). Further, the timing of Castillo's motion to withdraw his plea, filed four months later right before sentencing, severely undercuts that he pleaded guilty involuntarily. *See Doe*, 537 F.3d at 213 ("Where as a 'swift change' of heart may indicate a plea made in haste or confusion, the fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily.") Rather, the record shows that Castillo "was fully aware of the consequences of his plea when he entered it," and his plea was "the product of a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Doe*, 537 F.3d at 212. Like his last "change of heart" regarding cooperating once he secured bail, Castillo's instant "change of heart" as to pleading guilty prompted by his reevaluation of the penalty he was facing is an insufficient reason to withdraw a guilty plea. *See*

*Gonzalez*, 970 F.2d at 1100 (explaining that a "change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.").

Finally, Castillo fails to demonstrate ineffective assistance of counsel in connection with his decision to plead guilty, which meant giving up his motion to suppress. In light of the evidence proffered by the government—namely, the circumstances of the Defendant's search where his live-in girlfriend signed a written consent allowing the DEA to search the apartment; testimony of cooperating witnesses; law enforcement testimony about a phone call to arrange the drug transaction; and his safety-valve eligibility—trial counsel's advice that the Defendant plead guilty was reasonable. Castillo does not articulate any basis on which trial counsel could have challenged the government's evidence. *See Doe*, 537 F.3d at 214.

Castillo's allegations concerning the supposed strength of his suppression motion do not "show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Arteca*, 411 F.3d at 320. Nowhere in the affidavit does Castillo state that he would have insisted on proceeding to trial but for his counsel's advice. Nor do his allegations that he would have pursued his suppression motion, or his belief that he would have been successful on the suppression motion establish prejudice. *See id.* Even if Castillo had succeeded on the suppression motion, the Government still had significant evidence against him besides the drugs seized, including cooperating witness testimony, and law enforcement testimony about a phone call between the defendant and a co-defendant. (*See* Gov. Opp'n at 18.) In exchange for the guilty plea, the Government agreed that the defendant was eligible for points for acceptance and stipulated to a drug weight that was limited to the drugs seized in the apartment, even though the weight proved at trial could have

been much higher. (*Id.*) Further, the plea agreement set forth Castillo's safety valve eligibility allowing the Court to sentence him to less than the ten-year mandatory minimum. Having been made aware of the consequences of pleading guilty, Castillo knowingly, voluntarily and intelligently entered a plea of guilty to a charge that did not require a mandatory minimum sentence, pursuant to a plea agreement that stipulated to safety valve eligibility and preserved a three-level Guidelines reduction for acceptance of responsibility. Castillo has therefore failed to provide a "fair and just" reason that would allow this Court to set aside his guilty plea.[4]

## CONCLUSION

For the reasons discussed, Castillo's motion to withdraw his plea of guilty pursuant to Fed. R. Crim. P. 11(d)(2)(B) is denied. The Clerk of the Court is directed to terminate Docket 59. His sentencing is scheduled for Thursday, April 9, 2020 at 11:30am in Courtroom 14-C. Sentencing submissions are due no later than Friday, April 3, 2020.

Dated: New York, New York
March 9, 2020

SO ORDERED

PAUL A. CROTTY
United States District Judge

Copy mailed to:
Cesar Castillo
Register No. 91218-054
Metropolitan Detention Center
80 29th Street, P.O. Box 329002
Brooklyn, NY 11232

---

[4] As the Defendant has not demonstrated any "significant questions concerning the voluntariness or general validity of the plea," an evidentiary hearing is not necessary in this case. *See Gonzalez*, 970 F.2d at 1100 ("No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory.").